**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------x
**SECURITIES AND EXCHANGE COMMISSION,**          :
                                                                          :
                                   **Applicant,**          :          **22 Misc.**
          -against-                                            :          **ECF Case**
                                                                          :
**CURTIS WAYNE CRONIN and JOHN JOSEPH,**          :
                                                                          :
                                                                          :
                                   **Respondents.**          :
------------------------------------------------------------------------x


**MEMORANDUM OF LAW IN SUPPORT OF**
**SECURITIES AND EXCHANGE COMMISSION'S**
**APPLICATION FOR AN ORDER TO SHOW CAUSE AND**
**FOR AN ORDER REQUIRING COMPLIANCE WITH SUBPOENAS**

Richard G. Primoff
Steven G. Rawlings
Christopher M. Castano
Securities and Exchange Commission
New York Regional Office
100 Pearl Street, Suite 20-100
New York, New York 10004
(212) 336-0148 (Primoff)
primoffr@sec.gov

September 1, 2022

TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................. 1

STATEMENT OF FACTS ...................................................................................................... 2

    I. Respondents and BSRF ................................................................................................ 2

    II. The Commission's Investigation................................................................................. 3

    III. The 2022 Subpoenas ................................................................................................. 6

ARGUMENT ........................................................................................................................... 9

    A.    The July 18 Subpoenas Should Be Enforced ............................................................ 9

    B.  Respondents Cannot Demonstrate Any Legitimate Reason
         The July 18 Subpoenas Should Not Be Enforced. .................................................... 12

CONCLUSION ........................................................................................................................ 14

TABLE OF AUTHORITIES

**Cases**

*Endicott Johnson Corp. v. Perkins*,
    317 U.S. 501 (1943) .......................................................................................... 10, 14

*FTC v. Texaco, Inc.*,
    555 F.2d 862 (D.C. Cir. 1977) ................................................................................ 14

*In re Initial Public Offering Secs. Litig.*, No. 21 MC 92 (SAS), 2004 WL 60290, at *1 & n.7
    (S.D.N.Y. Jan. 12, 2004) ....................................................................................... 13n

*In re McVane*,
    44 F.3d 1127 (2d Cir. 1995) ............................................................................... 9, 10

*NLRB v. C.C.C. Assocs., Inc.*,
    306 F.2d 534 (2d Cir. 1962) ................................................................................... 14

*RNR Enters., Inc. v. SEC*,
    122 F.3d 93 (2d Cir. 1997) ............................................................... 9, 10, 11, 12, 13

*SEC v. Arthur Young & Co.*, 584 F.2d 1018 (D.C. Cir. 1978)
    *cert. denied*, 439 U.S. 1071 (1979) ....................................................................... 10

*SEC v. Brigadoon Scotch Distrib. Co.*,
    480 F.2d 1047 (2d Cir. 1973) ................................................................................. 12

*SEC v. Finazzo*,
    543 F. Supp. 2d 224 (S.D.N.Y. 2008) ................................................................... 10

*SEC v. Jerry T. O'Brien, Inc.*,
    467 U.S. 735 (1984) ................................................................................................. 9

*SEC v. Knopfler*, 658 F.2d 25, 26 (2d Cir.1981) ....................................................... 13

*SEC v. Sears*, 05 Civ. 728 (JE),
    2005 WL 5885548 (D. Or. Jul. 28, 2005)………………………………………….......13

*SEC v. Stilwell*, No. 14 Misc. 257 (ALC),
    2014 WL 4631915 (S.D.N.Y. Sept. 11, 2014)....................................................... 13

*United States v. Construction Products Research, Inc.*,
    73 F.3d 464 (2d Cir. 1996) ..................................................................................... 14

*United States v. Morton Salt Co.*,

338 U.S. 632 (1950)................................................................................................ 9

*United States v. Powell*,
   379 U.S. 48 (1964)......................................................................................... 10, 11

**Statutes, Rules and Regulations**

Section 20(a) of the Securities Act of 1933 (the "Securities Act"),
15 U.S.C. § 78(u)(a) ………….............................................................................3n

Section 21(a) of the Securities Exchange Act of 1934
("Exchange Act"), 15 U.S.C. § 78u (a) …………………………………………… 3n, 9

Section 21(c) of the Exchange Act, 15 U.S.C. § 78u(c)………...............................9, 9n

Section 209(a) of the Investment Advisors Act of
1940 (the "Advisors Act"), 15 U.S.C. § 80b-9(a)………….....................................3n

Commission Rule of Practice 232(c), 17 C.F.R. § 201.232(c)…………….....................12

Commission Rule of Practice 150(d)(3), 17 C.F.R. § 201.150(d) (3)......................... 12

The Securities and Exchange Commission ("Commission") respectfully submits this memorandum of law in support of its Application for an Order to Show Cause and for an Order Requiring Compliance with Subpoenas ("Application"). For the reasons set forth below, and in the accompanying Declaration of Christopher M. Castano dated September 1, 2022 ("Castano Declaration") and the exhibits thereto, the Commission respectfully requests that the Court enter an order directing respondents Curtis Wayne Cronin ("Cronin") and John Joseph ("Joseph") (collectively, "Respondents") to comply with the investigative subpoenas the Commission lawfully issued and served on them.[1]

## PRELIMINARY STATEMENT

Cronin and Joseph are Managing Partners of Broadway Strategic Return Fund, LP (the "Fund"), an investment fund that claims to produce returns by investing in securities related to theatrical productions. Cronin and Joseph are also founding members and one-third owners of the Fund's General Partner, Ridgeline Productions LLC (the "General Partner"). Among other things, the Commission is investigating whether Respondents or others made materially misleading statements to existing or prospective investors concerning the valuation of the Fund assets.

After Cronin appeared for investigative testimony before the Commission in 2021, the Commission obtained certain marketing materials that the Fund and its General Partner sent to prospective investors. These marketing materials expressly denied the existence of any investigations of the Fund or its General  Partner. In April 2022, the Commission issued investigative subpoenas seeking documents and testimony from Respondents—in Cronin's case,

---

[1]     The Commission's proposed Order to Show Cause contains a proposed briefing schedule, respectfully submitted to accommodate previously arranged travel commitments of counsel for the Commission, and intervening religious holidays.

a second testimony date—and served the subpoenas on Respondents' counsel by email. After their counsel refused to confirm that he accepted service of those subpoenas, the Commission reissued identical subpoenas in July 2022 and served them on Respondent's counsel by overnight delivery, pursuant to the Commission's Rules of Practice.

The subpoenas seek, among other things, testimony from the Respondents and documents concerning the Fund's valuation and communications with investors. While the Fund itself has produced documents during the investigation, Respondents have not produced documents in response to the April or July 2022 subpoenas. Joseph has never testified or agreed to testify, and Cronin has not appeared or agreed to appear for testimony in response to the April or July 2022 subpoenas. Nor do Respondents have any legitimate reason for failing to comply with the subpoenas. The Court should therefore order Respondents to comply with the July 2022 subpoenas promptly so that the Commission can continue its investigation.

## STATEMENT OF FACTS

### I.    The Fund and Respondents

The Fund is a Delaware limited partnership, whose General Partner maintains its principal place of business in New York, New York. (Castano Decl. ¶ 5, and Ex. 1, Ex. 2 at 2.) Cronin and Joseph are both Managing Partners of the Fund, as well as founding members, Managing Partners, and one-third owners of the General Partner. (Castano Decl. ¶ 6-8, and Ex. 2 at 2, 4-6, Ex. 4.) Cronin appears to reside in San Carlos, California. (Castano Decl. ¶ 6, and Ex. 3.) Joseph appears to reside in Dallas, Pennsylvania. (Castano Decl. ¶ 7, and Ex. 5.)

The Fund purports "to produce returns by investing capital and any accrued profits in securities related to Broadway theatrical productions and other securities, including film rights and cast recordings." (Castano Decl. ¶ 8, and Ex. 2 at 9.) As of September 2021, the Fund

claimed to have $105.4 million under management, with a compounded annual rate of growth of 28.2% since 2016. (*Id.* at ¶ 8, and Ex. 2 at 2.) As of June 2020, BSFR claimed to have approximately 79 investors. (*Id.* at ¶ 8, and Ex. 6.)

## II.    The Commission's Investigation

On January 31, 2020, the Commission issued an Order Directing Private Investigation and Designating Officers to Take Testimony (the "Formal Order") pursuant to statutory authority.[2] The Formal Order designates certain individuals, including Senior Counsel Christopher Castano ("Castano") and Assistant Regional Director Steven G. Rawlings ("Rawlings") as officers of the Commission empowered to issue subpoenas and take evidence in the Commission's non-public investigation entitled *In the Matter of Broadway Strategic Return Fund, LP*, Internal File No. NY-10189 (the "Investigation").[3] (Castano Decl. ¶ 9.)

The Commission is investigating whether Respondents, the Fund or others violated, among other things, the anti-fraud provisions of the federal securities laws, by misrepresenting the value of the Fund's assets and its performance to actual or prospective investors. (Castano Decl. ¶¶ 2, 3, 9, 10.) In addition, based on information the Commission staff received during the course of its Investigation, the Commission is also investigating whether Respondents or others on behalf of the Fund falsely represented in due diligence questionnaires ("DDQ"s) used to

---

[2]    Section 20(a) of the Securities Act of 1933 (the "Securities Act"), Section 21(a) of the Securities Exchange Act of 1934 ("Exchange Act"), and Section 209(a) of the Investment Advisors Act of 1940 (the "Advisors Act") authorize the Commission to conduct investigations. *See* 15 U.S.C. §§ 77t(a), 78u(a) & 80b-9(a).

[3]    Commission formal orders are not public. The Commission has not included a copy of the Formal Order with this Application and respectfully requests that the Court conduct an *in camera* review if the Court wishes to examine it.

market the Fund that there have not been any investigations of the General Partner or the Fund. (Castano Decl. ¶¶ 10, 16.)

On September 24, 2020, the Commission issued a subpoena for documents to the Fund (the "Fund Subpoena") pursuant to the Formal Order. (Castano Decl. ¶ 11 and Ex. 7.) On July 19, 2021, the Commission issued a second subpoena to the Fund (the "Second Fund Subpoena") pursuant to the Formal Order. (Castano Decl. ¶ 13 and Ex. 11) The Second Fund Subpoena was nearly identical to the Fund Subpoena and sought updated records. (*Id.*) The Fund produced responsive documents pursuant to both subpoenas. (*Id.*)

Respondents' counsel appeared on behalf of the Fund after service of the Fund Subpoena and requested a copy of the Formal Order on the Fund's behalf. (Castano Decl. ¶ 12.) The Commission staff provided him with a copy of the Formal Order on September 29, 2020. (*Id.*, and Ex. 10.)

In June 2021, the Commission issued a subpoena to Cronin for documents and testimony and served it by email to Respondents' counsel. (Castano Decl. ¶ 14 and Ex. 12.) Apart from providing a completed background questionnaire, Cronin did not make an independent production of responsive documents. Respondents' counsel instead referred the Commission staff to the Fund's prior production. (Castano ¶ 14.) Cronin appeared for testimony on July 8, 2021, during which, Respondents' counsel, appearing on Cronin's behalf, acknowledged on the record that a copy of the Formal Order was made available to him and his client for review. (Castano Decl. ¶ 15 and Ex. 13.)  Cronin also stated that he had gathered responsive documents for the Fund's document production, and indicated he searched his own Gmail drive to locate responsive documents. (Castano Decl. ¶ 15, and Exh. 13.) At the testimony's conclusion, Commission staff noted on the record the possibility that it would seek additional testimony from

Cronin at a later date, and Respondents' counsel raised no objection. (*Id.*)

After the conclusion of that testimony, the Commission received additional documents concerning the manner in which the Fund valued its assets, including from the Fund's former auditor. In addition, on approximately August 23, 2021, the Fund produced various versions of a DDQ, including one dated December 31, 2020—more than two months after the Commission sent its first subpoena to the Fund—that was disseminated to at least one investor (the "December 2020 DDQ"). (Castano Decl. ¶ 16.)

In the December 2020 DDQ, the Fund and the General Partner responded to the question of whether there has been "any investigations by an industry regulatory body of [the General Partner], its affiliated entities and/or any of its current or former Team Members." (Castano ¶ 16, and Ex. 14.) The Fund and its General Partner responded as follows: "No, there has never been any investigation by an industry regulatory body of [the General Partner], its affiliated entities and/or any of its current or former Team Members." The Fund and its General Partner provided substantially the same negative responses in response to two other questions: "Have there been any criminal or administrative proceedings or investigations against [the General Partner], its affiliated entities and/or any of its current or former Team Members?" and "Describe any pending or ongoing litigation/investigation against [the General Partner], its affiliated entities and/or its current or former Team Members." (Castano Decl. ¶ 16.)

Later, in early 2022, the Commission staff received from actual or prospective investors various versions of DDQs containing substantially the same representations and bearing subsequent dates, including one dated September 2021 (the "September 2021 DDQ"). (Castano Decl. ¶ 16 and Ex. 2.)

Beginning in November 2021, in telephone calls to Respondents' counsel, the

Commission staff expressed its concerns about the apparent falsity of the DDQs and their use as marketing materials to investors. (Castano ¶ 21, n. 6.) These phone calls included two in March 2022, one before and one after Respondents' counsel sent a lengthy letter, dated March 24, 2022, to the Commission's Director of Enforcement, in which Respondents' counsel complained about what he characterized as a shift by the Commission staff in the investigation's focus from valuation to the DDQs. (*Id.*, and Ex. 18.) He argued that he believed the responses in the DDQs were not false and misleading, because the Fund purportedly did not have a "duty to disclose" the Investigation and asked that the Investigation be terminated. (*Id.*)

### III.    The 2022 Subpoenas

On March 31, 2022, Commission counsel reached out to Respondents' counsel to ask for dates for Joseph's testimony and for Cronin's continued testimony. Later the same day, Respondents' counsel replied that he would "be out of the office on business for the next 2 weeks, and then tied up most of the rest of April with no free days." (Castano Decl. ¶ 21, and Ex. 17.) He continued: "I am then away on a family vacation for the 1st 2 weeks of May. The earliest we could have any testimony would be some time in the middle to late May." (*Id.*)

The next day, on April 1, 2022, the Commission staff issued subpoenas to the Respondents (the "April 1 Subpoenas") pursuant to the Formal Order. (Castano Decl. ¶ 18, and Exs. 15 and 16.) The Commission staff served the April 1 Subpoenas on Respondents' counsel by e-mail, as the Commission staff had done with the prior subpoena issued to Cronin, to which Respondents' counsel had not objected. (Castano Decl. ¶ 18, and Ex. 17.) The April 1 Subpoenas required the Respondents to produce documents in their possession or control concerning communications with investors, Fund marketing materials, and Fund valuation methodology, among other things, by April 19, 2022. (Castano Decl. ¶¶ 19-20, and Exs. 15, 16.) The April 1

Subpoena to Joseph required him to appear for sworn investigative testimony before the Commission staff on May 19, 2022, in accordance with Respondents' counsel's scheduling request on March 31. The April 1 Subpoena to Cronin similarly required him to appear for a second session of sworn investigative testimony before the Commission staff on May 25, 2022. (Castano Decl. ¶ 20, and Exs 15, 16.)

On April 1, 2022, after receiving the April 1 Subpoenas, Respondent's counsel responded by email: "We do not confirm any of the dates indicated in the subpoenas, and I will respond in due course if my clients will attend or if those dates are not available." (Castano Decl. Ex. 22.) Respondents' counsel also complained in his email that the Commission staff's effort to obtain additional testimony from Cronin constituted "harassment" and conjectured that the Commission staff had already pre-judged the investigation's outcome. (*Id.*)

On April 11, 2022, having received no further response from Respondents' counsel, the Commission staff emailed him and reminded him that he had previously assured the Commission staff that he would "respond in due course" if his clients were available on the noticed dates and asked him for alternate dates if those dates did not work. (Castano Decl. ¶ 23.) Respondents' counsel did not respond to that email, or to subsequent emails dated May 6 and 24, 2022, the latter of which notified Respondents' counsel that the Commission staff now planned to take Joseph's testimony on June 17 and Cronin's testimony on June 24. Respondents' counsel then did not respond to a voicemail on June 10, 2022, or a subsequent June 14 letter, in which the Commission staff also requested that, if Respondents did not intend to appear for testimony on these dates, that their counsel provide an explanation of the purported basis for their non-compliance. (Castano Decl. ¶¶ 23-24, and Exs. 20, 21.)

Neither Joseph nor Cronin appeared for testimony on June 17 and 24, 2022. (Castano Decl. ¶ 26, and Exs. 22, 23.)

On July 13, 2022, because Respondents' counsel had not expressly advised the Commission staff that he had accepted service of the April 1 Subpoenas, the Commission staff sent him a letter requesting his confirmation that he had accepted service of those subpoenas.[4] The Commission staff further advised Respondents' counsel that, if he did not provide that confirmation, the Commission staff would reissue duplicate copies of the April 1 Subpoenas and serve them on his clients by overnight courier. The letter also requested that he and his clients reconsider their refusal to appear for testimony in response to the April 1 Subpoenas. (Castano Decl. ¶ 27, and Ex. 24.)

Respondents' counsel responded by email that same day and threatened that, if the Commission staff served his clients directly, he would "file a bar complaint against [the staff] for attempting to contact a represented party." He further instructed the Commission staff that "[a]ny communication from the SEC must come through me." (Castano Decl. ¶ 28, and Ex. 25.) On July 18, 2022, in response, the Commission staff reissued the prior subpoenas (the "July 18 Subpoenas") and served them on Respondents' counsel by email and by UPS overnight courier. (Castano Decl. ¶ 29, and Exs. 26, 27.) The documents sought by the July 18 Subpoenas are identical to those sought by the April 1 Subpoenas. The July 18 Subpoenas also sought testimony from Joseph on July 27, 2022, and from Cronin on July 29, 2022. (Castano Decl. ¶ 30.)

Respondents have not produced any documents called for by the July 18 (or April 1) Subpoenas, did not appear for investigative testimony on the dates noticed in the July 18 (or

---

[4]     As described further below in the Argument section, the Commission's Rules of Practice do not ordinarily permit investigative subpoenas to be served by email.

April 1) Subpoenas, and have not agreed to appear on any other dates. (Castano Decl. ¶ 31, and Exs. 29, 30.)

## ARGUMENT

### I.   <u>The July 18 Subpoenas Should Be Enforced.</u>

The Commission properly served the July 18 Subpoenas on Respondents to investigate whether, among other things, Respondents misrepresented to actual or prospective investors the value of the Fund's assets or its performance or the existence of the Investigation. Respondents have refused to comply with the July 18 Subpoenas. The Commission satisfies each of the requirements for enforcement of its subpoenas, and Respondents can offer no legitimate reason why they should not be enforced. The Court should therefore order Respondents to promptly comply with the July 18 Subpoenas.

The Commission has "broad authority to conduct investigations into possible violations of the federal securities laws and to demand production of evidence relevant to such investigations." *SEC v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 741 (1984); *see also* 15 U.S.C. § 78u(a)(1). Section 21(c) of the Exchange Act authorizes the Commission to seek an order from this Court compelling Respondents to comply with the subpoenas.[5] *See* 15 U.S.C. § 78u(c).

"The courts' role in a proceeding to enforce an administrative subpoena is extremely limited." *RNR Enters., Inc. v. SEC*, 122 F.3d 93, 96–97 (2d Cir. 1997) (quoting *In re McVane*, 44 F.3d 1127, 1135 (2d Cir. 1995)) (affirming order directing compliance with Commission subpoenas). A court should enforce administrative subpoenas if the information sought is "within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant." *United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950).

---

[5]   Venue properly lies in the Southern District of New York because this District is "the jurisdiction [in] which [the] investigation…is carried on." 15 U.S.C. § 78u(c).

9

To obtain an order enforcing the July 18 Subpoenas, the Commission need only demonstrate that it meets four requirements: "[1] that the investigation will be conducted pursuant to a legitimate purpose, [2] that the inquiry may be relevant to the purpose, [3] that the information sought is not already within the Commission['s] possession, and [4] that the administrative steps required…have been followed." *RNR Enters.*, 122 F.3d at 96–97 (quoting *United States v. Powell*, 379 U.S. 48, 57–58 (1964)); *see also SEC v. Arthur Young & Co.*, 584 F.2d 1018, 1021, 1024 (D.C. Cir. 1978) (affirming the enforcement of Commission subpoenas). "An affidavit from a governmental official is sufficient to establish a prima facie showing that these requirements have been met." *RNR Enters.*, 122 F.3d at 97 (quoting *McVane*, 44 F.3d at 1136). The Commission satisfies each of the four *prima facie* requirements for enforcement of the July 18 Subpoenas.

*First*, the Commission is conducting the Investigation for a legitimate purpose: to determine whether Respondents or others, through the Fund, have violated anti-fraud or other provisions of the securities laws. *See RNR Enters.*, 122 F.3d at 97 (holding that an investigation into potential securities law violations reflects a "legitimate investigatory purpose"); *SEC v. Finazzo*, 543 F. Supp. 2d 224, 227 (S.D.N.Y. 2008); *Arthur Young & Co.*, 584 F.2d at 1024.

*Second*, the Commission seeks documents and testimony relevant to the Investigation. To satisfy this requirement, the Commission need only show that the information sought is "not plainly incompetent or irrelevant to any lawful purpose." *Arthur Young & Co.*, 584 F.2d at 1029 (quoting *Endicott Johnson Corp. v. Perkins*, 317 U.S. 501, 509 (1943)). Courts "defer to the agency's appraisal of relevancy, which must be accepted so long as it is not obviously wrong." *RNR Enters.*, 122 F.3d at 97 (quoting *McVane*, 44 F.3d at 1135).

10

The July 18 Subpoenas seek testimony and documents concerning communications with investors and the valuation of the Fund's assets, among other things. (Castano Decl. ¶¶ 18-19, 29-30, and Exs. 26, 27.) The Commission also seeks testimony concerning the drafting and dissemination of the DDQs representing to prospective investors that there were no existing or prior regulatory investigations of the Fund or the General Partner. This information, along with the Respondents' testimony on similar issues, is not only relevant but critical to the Commission's investigation. Without this information and testimony, the Commission cannot meaningfully investigate how the marketing and valuation materials were created and who created them, among other things. (Castano Decl. ¶ 17.)

*Third*, the Commission does not already have the information the July 18 Subpoenas seek. Joseph has not testified, and Cronin has not testified regarding the DDQs, which the Commission received only after his first testimony session. Nor has Cronin testified in response to questions concerning the additional information the Commission staff has received regarding the Fund's dispute with its former auditor regarding the valuation of the Fund's assets, and what, if anything, actual or prospective investors were told about it. (Castano Decl. ¶¶ 15, 18, 25.) Since Respondents have also not produced any documents in response to the July 18 Subpoenas directed to them, the Commission staff does not already have that information, including documents reflecting Respondents' communications with existing or prospective investors and the Fund's former auditor.[6]

*Fourth*, the Commission issued and served the July 18 Subpoenas in accordance with "the administrative steps required." *RNR Enters.*, 122 F.3d at 96–97 (quoting *Powell*, 379 U.S. at 57–58). The subpoenas were issued by Commission staff specifically authorized by the Formal

---

[6]    The July 18 Subpoena to Cronin instructed that he could state in response whether he previously produced responsive documents. Castano Decl. ¶¶ 20, 29, Ex. 26.

Order to issue subpoenas in the Investigation. (Castano Decl. ¶ 11.) And the Commission staff properly served the July 18 Subpoenas on the Respondents. (Castano ¶¶ 27-29, and Exs. 26-28.) The Commission's Rules of Practice govern the procedures for Commission proceedings, including the service of investigative subpoenas. Rule 232(c) provides that service of Commission investigative subpoenas must be made under the provisions of Rule 150(b) through (d). *See* 17 C.F.R. § 201.232(c). Rule 150(d)(3) permits service of Commission investigative subpoenas by "sending the papers through a commercial courier service or express delivery service." 17 C.F.R. § 201.150(d)(3). The Commission staff served the July 18 Subpoenas by overnight UPS delivery (with a copy by email) to Respondents' counsel—as he had insisted upon and instructed the Commission staff to do—and therefore properly served them. (Castano Decl. ¶¶ 28-29.)

Accordingly, the Commission has established a *prima facie* showing that enforcement of the subpoenas issued to Respondents is warranted.

**II.     Respondents Cannot Demonstrate Any Legitimate Reason
         the July 18 Subpoenas Should Not Be Enforced.**

Once the Commission makes a *prima facie* showing, a respondent seeking to defeat enforcement of a Commission subpoena bears the burden of demonstrating that they are "unreasonabl[e]," they are "issued in bad faith or for an 'improper purpose,'" or "compliance would be '*unnecessarily* burdensome.'" *RNR Enters.*, 122 F.3d at 97 (quoting *SEC v. Brigadoon Scotch Distrib. Co.*, 480 F.2d 1047, 1056 (2d Cir. 1973)) (emphasis in original).

Here, Respondents have refused to comply with validly-issued Commission subpoenas, while hiding behind their counsel's conclusory accusations of "bad faith" and "harassment" against the Commission staff, premised solely on the Commission staff's lawful and necessary efforts to obtain information regarding potentially misleading communications to existing or

prospective investors. Respondents' counsel's conclusory accusations of bad faith do not

establish any legitimate excuse for Respondents to avoid compliance with the July 18

Subpoenas. *See RNR Enters.*, 122 F.3d at 97 (conclusory allegations of bad faith insufficient to

defeat Commission's application for enforcement of subpoenas); *SEC v. Knopfler*, 658 F.2d 25,

26 (2d Cir. 1981) (same).

     Respondents' counsel's conjecture that the Commission staff has "pre-judged" this

matter—merely because the Commission staff told Respondents' counsel of its concerns about

the apparent falsity of the Fund's marketing materials (*see* p. 7 above)—similarly provides no

basis for overcoming the Commission's right to obtain compliance with the July 18 Subpoenas.

Indeed, even if the Investigation were further along and the Commission staff had formally

notified Respondents through a Wells notice that the staff had preliminarily decided to

recommend to the Commission that it authorize an enforcement proceeding against Respondents,

the Commission would still be entitled to enforcement of the subpoenas.[7] For example, in *SEC v.

Stilwell*, Judge Carter rejected the respondent's contention that a Commission investigative

subpoena was improper because it was issued after the Commission staff had sent a Wells notice

to the respondent. No. 14 Misc. 257 (ALC), 2014 WL 4631915, at *2 (S.D.N.Y. Sept. 11, 2014)

(citing *SEC v. Sears*, No. 05 Civ. 728 (JE), 2005 WL 5885548 at *1-2 (D. Or. July 28, 2005)).

The court recognized that the "Commission's investigatory prerogative permits its staff to reach

tentative conclusions and thereafter seek additional documents or testimony in aid of making

final determinations." As the court further noted, the respondent's argument that the Commission

was improperly seeking discovery in advance of litigation was "speculative and inadequate" to

---

[7]    "The Wells process is relatively straightforward. Targets of SEC investigations are
notified whenever the Enforcement Division staff decides, even preliminarily, to recommend
charges." *In re Initial Public Offering Secs. Litig.*, No. 21 MC 92 (SAS), 2004 WL 60290, at *1
& n.7 (S.D.N.Y. Jan. 12, 2004) (noting exceptions to this practice).

defeat the Commission's subpoena enforcement application, as "a similar observation could easily be made in most any investigation."

Nor may Respondents defeat the July 18 Subpoenas' enforcement by arguing (as Respondents' counsel has repeatedly attempted to do, *see* Castano Decl. ¶¶ 21, 25, and Exs. 18, 20) that they did not violate the federal securities laws. "If parties under investigation could contest substantive issues in an enforcement proceeding, when the agency lacks the information to establish its case, administrative investigations would be foreclosed or at least substantially delayed." *FTC v. Texaco, Inc.*, 555 F.2d 862, 879 (D.C. Cir. 1977); *see also Endicott Johnson Corp.*, 317 U.S. at 509; *United States v. Construction Products Research, Inc.*, 73 F.3d 464, 470 (2d Cir. 1996); *NLRB v. C.C.C. Assocs., Inc.*, 306 F.2d 534, 538 (2d Cir. 1962).

## CONCLUSION

For the foregoing reasons, the Commission respectfully requests that the Court order Respondents to show cause why they should not comply with the July 18 Subpoenas and, absent any such cause, order them to comply with the subpoenas.

Dated:  September 1, 2022
        New York, New York

                                    SECURITIES AND EXCHANGE COMMISSION

                                    By:

                                            /s/ Richard G. Primoff
                                            Richard G. Primoff
                                            Steven G. Rawlings
                                            Christopher M. Castano
                                            Attorneys for Plaintiff
                                            Securities and Exchange Commission
                                            New York Regional Office
                                            100 Pearl Street
                                            New York, New York 10004
                                            (212) 336-0148 (Primoff)
                                            primoffr@sec.gov

14